**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

RICARDO RANGEL-PADILLA, et al.

    Plaintiffs,

v.

DR. CARMEN ROMAN-TORRES, et al.

    Defendants.

**Civil No. 11-1480 (SEC)**

**OPINION AND ORDER**

Before the Court are defendants' motion to dismiss (Docket # 17) and plaintiffs' opposition thereto (Docket # 18). After reviewing the filings and the applicable law, defendants' motion is **GRANTED** in part and **DENIED** in part.

**Factual and Procedural Background**

Co-plaintiff Ricardo Rangel-Padilla, his wife, and their conjugal partnership (collectively, "Plaintiffs") filed this suit under the First, Fourth, and Fourteenth Amendments of the U.S. Constitution as well as under the laws of the Commonwealth of Puerto Rico. They claim that defendants (1) terminated Rangel-Padilla's employment at the Administration of Mental Health Services and Services Against Addiction ("ASSMCA," the Spanish acronym) for political reasons; (2) illegally inspected Rangel-Padilla's personnel files; and (3) abridged Rangel-Padilla's procedural due process rights. Defendants, who are sued in both their personal and official capacities are ASSMCA's Administrator, Nydia Ortiz; ASSMCA's Ponce Regional Director, Carmen Roman-Torres; and an employee of the Human Resources Office of the Commonwealth of Puerto Rico, Alberto Santana (together with the other co-defendants "Defendants"). The relevant facts, as averred in the complaint, follow.

In 1987, Rangel-Padilla began working as a contract employee at ASSMCA's office in Ponce. He did well through the years, becoming a permanent career employee in 1989, an

assistant manager in 2006, and the Director of the Ponce Methadone Center thereafter. When offduty, Rangel-Padilla actively participated in meetings and other political activities of the Popular Democratic Party ("PDP"), a fact widely known at his workplace. And in 2008, he served as campaign manager for the son of ASSMCA's Administrator, who at the time was running for a senatorial seat in the PDP ticket.

Change came in January 2009. Newly elected Governor Luis Fortuño named co-defendant Ortiz as ASSMCA's Administrator. He also ordered the Human Resources Office of the Commonwealth of Puerto Rico to audit personnel transactions undertaken at ASSMCA between July 1, 2008 and January 3, 2009. Co-defendant Santana was selected to represent the Human Resources Office in the committee formed to perform the audit. Then, in July 2009, Ortiz hired co-defendant Roman-Torres to direct ASMMCA's office in Ponce.[1] Things at work for Rangel-Padilla went downhill from there.

Upon taking office, Roman-Torres quickly learned that Rangel-Padilla had served as campaign manager for a PDP candidate. To the first meeting held to discuss matters at the Ponce Methadone Service Center, Roman-Torres excluded Rangel-Padilla, even though he directed the Center. Subsequently, she held personnel meetings, made personnel decisions, moved the file room, and transferred office equipment such as desks, credenzas, and computers out of the Methadone Center without notifying Rangel-Padilla. But when superiors questioned her unilateral decisions, Roman-Torres blamed Rangel-Padilla.

Rangel-Padilla also felt mistreated for other reasons. For example, when Roman-Torres allowed his participation in meetings with other directors, Rangel-Padilla would be the only one asked about areas unrelated to his duties. Roman-Torres also actively questioned matters under Rangel-Padilla's direction, while sparing others from similar inquisitions. Similarly, she charged Rangel-Padilla with mismanaging the timesheets of subordinates and,

---

[1] Plaintiffs allege (and Defendants do not refute) that Ortiz, Roman-Torres, and Santana are members of the New Progressive Party ("NPP").

without notice or explanation, eventually took such responsibility away from him. She then began imparting direct instructions to Rangel-Padilla's subordinates and publicly disparaging his supervisory skills. Roman-Torres even went as far as spreading the false rumor that Rangel-Padilla and other directors identified with the PDP had tested positive for drug use. Thus, her public statement that she wanted to get rid of that "popular" (referring to Rangel-Padilla) surprised nobody.

Co-defendant Ortiz had a similar penchant toward Rangel-Padilla and other PDP affiliates. For that reason, she requested Santana and other members of the audit committee to "root through particular PPD employee's personnel files in an attempt to find reasons to justify any firings with the intention of having those PPD career employees replaced with NPP affiliates." Docket # 1, ¶ 65. To accomplish this, Ortiz "authorized and ordered [the committee] . . . to go beyond the years they could validly investigate, and to try to root out reasons to fire Plaintiff Rangel." Id.,¶ 75. She also ordered "those under her direction to identify, and harass PDP career employees, who could not be fired for being confidence employees . . . ." Id., ¶ 82. Moreover, Ortiz ordered subordinates to take away the functions and duties of PDP employees, "with the ultimate intention of having [them] fired either constructively or otherwise." Id. This included directly authorizing Roman-Torres "to harass [Rangel-Padilla], because of his opposing political views . . . ." Id., ¶ 75.

Be that as it may, the audit Governor Fortuño ordered in 2009 proved negative for Rangel-Padilla. In January 2010, Rangel-Padilla received a letter from Ortiz stating that she intended to terminate his employment based on the audit—allegedly, the process yielded evidence that Rangel-Padilla had lied about job experience to attain a promotion in 2006.[2] A failed administrative proceeding ensued, and Rangel-Padilla was officially terminated in May 25, 2010.

---

[2] Rangel-Padilla disputes Ortiz's imputations. Nevertheless, the Court need not delve into this issue at this stage.

Plaintiffs filed this suit on May 24, 2011. Docket # 1.[3] After preliminary procedural nuances, Defendants moved to dismiss, arguing that the complaint (1) fails to establish a constitutional violation; (2) is time barred; and (3) is precluded by the qualified immunity doctrine.[4] Plaintiffs opposed each of these contentions.[5]

**Standard of Review**

To survive a Rule 12(b)(6) motion to dismiss, Plaintiffs' "well-pleaded facts must possess enough heft to show that [they are] entitled to relief." Clark v. Boscher, 514 F. 3d 107, 112 (1st Cir. 2008). In evaluating whether Plaintiffs are entitled to relief, the court must accept as true all "well-pleaded facts [and indulge] all reasonable inferences" in plaintiff's favor. Twombly, 550 U.S. 544, 556 (2007). The First Circuit has held that "dismissal for failure to state a claim is appropriate if the complaint fails to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F. 3d 301, 305(1st Cir. 2008). Court "may augment the facts in the complaint by reference to documents annexed to the

---

[3] Plaintiffs also commenced a parallel administrative proceeding against the Commonwealth of Puerto Rico. None of the Defendants is a party to that proceeding.

[4] Defendants also moved the Court to abstain under Younger v. Harris, 401 U.S. 37 (1971) and to dismiss the complaint under Mt. Healthy v. Doyle, 429 U.S. 274 (1977). Both of these contentions can be discarded out of hand. First, this case involves different parties than those involved at the administrative level. Further, this District routinely hears cases in which a plaintiff seeks relief under § 1983 for an adverse employment decision while the same employment decision is under appeal before an administrative agency. Defendants have failed to cite a single case in which Younger has precluded this practice, and the Court is aware of none. Younger is therefore unavailing here. Second, Defendants have provided no valid reason to deviate from the general rule that the Mt. Healthy defense "is inappropriate at the motion to dismiss stage because the parties have not yet engaged in any significant discovery." People United for Children, Inc. v. City of New York, 108 F.Supp.2d 275, 296 n. 14 (S.D.N.Y. 2000).

[5] In their opposition memoranda, Plaintiffs also moved for leave to amend the complaint in order to include a new defendant. Such request comes many months after the applicable deadline. See Docket # 25. Thus, Plaintiffs' one-sentence request for leave is insufficient to satisfy the "good cause" standard applicable here. See O'Connell v. Hyatt Hotels of Puerto Rico, 357 F.3d 152, 154-55 (1st Cir. 2004). Leave to amend is therefore **DENIED**.

complaint or fairly incorporated into it, and matters susceptible to judicial notice." Id. at 305-306. Nevertheless, in judging the sufficiency of a complaint, courts must "differentiate between well-pleaded facts, on the one hand, and 'bald assertions, unsupportable conclusions, periphrastic circumlocution, and the like,' on the other hand; the former must be credited, but the latter can safely be ignored." LaChapelle v. Berkshire Life Ins., 142 F.3d 507, 508 (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir.1996)); see also, Buck v. American Airlines, Inc., 476 F. 3d 29, 33 (1st Cir. 2007). Thus, Plaintiffs must rely on more than unsupported conclusions or interpretations of law, as these will be rejected. Berner v. Delahanty, 129 F.3d 20, 25 (1st Cir. 1997) (citing Gooley v. Mobil Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988)).

Moreover, "even under the liberal pleading standards of Fed R. Civ. P. 8, the Supreme Court has recently held that to survive a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" Twombly, 550 U.S. at 559 (cited in Rodriguez-Ortíz v. Margo Caribe, Inc., 490 F.3d 92 (1st Cir. 2007)). Although complaints do not need detailed factual allegations, the plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Twombly, 550 U.S. at 556.

In Ashcroft v. Iqbal, 556 U.S. 662 (2009), the Supreme Court reaffirmed Twombly and clarified that two underlying principles must guide a court's assessment of the adequacy of pleadings when evaluating whether a complaint can survive a Rule 12(b)(6) motion. First, the court must identify any conclusory allegations in the complaint as such allegations are not entitled to an assumption of truth. Id., at 677. Specifically, the court is not compelled to accept legal conclusions set forth as factual allegations in the complaint. Id. Further, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555); see also Peñalbert-Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) ("[S]ome allegations, while not stating

6

ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory to the factual."). In other words, "[a] plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action." Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1,12 (1st Cir. 2011).

Second, a complaint survives only if it states a plausible claim for relief. Iqbal, 556 U.S. at 670. Thus, any nonconclusory factual allegations in the complaint, accepted as true, must be sufficient to give the claim facial plausibility. Id. A claim has facial plausibility when the pleaded facts allow the court to reasonably infer that the defendant is liable for the specific misconduct alleged. Id., at 677, 682. Such inferences must amount to more than a sheer possibility and be as plausible as any obvious alternative explanation. Id., at 677. Plausibility is a context-specific determination that requires the court to draw on its judicial experience and common sense. Id., at 678.

The aforementioned requirements complement a bedrock principle of the federal judicial system: a complaint must contain enough detail to give "a defendant fair notice of the claim and the grounds upon which it rests." Ocasio-Hernandez, 640 F.3d at 8 (citing Fed. R. Civ. P. 8(a)(2)). Accordingly, "[w]hile a plaintiff's claim to relief must be supported by sufficient factual allegations to be plausible under Twombly [and Iqbal], nothing requires a plaintiff to prove her case in the pleadings." Chao v. Ballista, 630 F.Supp. 2d 170, 177 (D.Mass. 2009). Put differently, even after Twombly and Iqbal, "[d]ismissal of a complaint under Rule 12(b)(6) is inappropriate if the complaint satisfies Rule 8(a)(2)'s requirement of a short and plain statement of the claim showing that the pleader is entitled to relief." Ocasio-Hernandez, 640 F.3d at 11.

A different standard applies when dismissal is sought under Rule 12(b)(6) pursuant to a statute of limitations affirmative defense. Under this scenario, dismissal may be appropriate if "the facts that establish the defense . . . [are] definitively ascertainable from the allegations of the complaint, the documents (if any) incorporated therein, matters of

public record, and other matters of which the court may take judicial notice." In re Colonial Mortgage Bankers Corp., 324 F.3d 12, 16 (1st Cir. 2003); Jones v. Bock, 549 U.S. 199, 215 (2007). Thus, even though a complaint need not plead facts to avoid potential affirmative defenses, plaintiffs could plead themselves "out of court by alleging facts that are sufficient to establish the defense." Hollander v. Brown, 457 F.3d 688, 691 n. 1 (7th Cir. 2006).

**Applicable Law and Analysis**

*I. Claims under the U.S. Constitution*

The Court's analysis begins with 42 U.S.C. § 1983, which is the statutory predicate for the vindication of federal rights elsewhere conferred. Graham v. Connor, 490 U.S. 386, 393-94 (1989). To prove liability under § 1983, a "plaintiff[] must show by a preponderance of the evidence that (1) the challenged conduct was attributable to a person acting under color of state law; and (2) the conduct deprived the plaintiff of rights secured by the Constitution or laws of the United States." Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 151-52 (1st Cir. 2006). Moreover, under § 1983, government officials may only "be held liable if the plaintiff can establish [a] constitutional injury result[ing] from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization." Rodriguez-Garcia v. Municipality of Caguas, 495 F.3d 1, 10 (1st Cir. 2007) (internal quotation marks omitted). A plaintiff must therefore link each individual defendant to the alleged violation of federal rights. Gonzalez-Piña v. Rodriguez, 407 F.3d 425, 432 (1st Cir. 2005). In other words, each defendant responds for his own acts or omissions in light of his duties; there is no liability on the basis of *respondeat superior*. Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87, 91-92 (1st Cir. 1994); Rizzo v. Goode, 423 U.S. 362, 375-77 (1976). Furthermore, the actionable conduct must be intentional, grossly negligent, or with reckless or callous indifference to established constitutional rights. Gutierrez-Rodriguez v. Cartagena, 882 F.2d 553, 562 (1st Cir. 1989); Simmons v. Dickhaut, 804 F.2d 182, 185 (1st Cir. 1986).

8

Here, Plaintiffs' complaint satisfies the first prong of the § 1983 analysis, as all the decisions at issue in this case were taken under color of state law. Defendants do not dispute this point. They contend instead that Plaintiffs' complaint fails to state a violation of a constitutional right. The Court addresses Defendants' contentions in turn.

*A. First Amendment Political Discrimination Claims*

Political discrimination is proscribed by the First Amendment of the United States Constitution. Kusper v. Pontikes, 414 U.S. 51, 56-57 (1973). As the First Circuit has remarked: "The right to associate with the political party of one's choice is an integral part of the basic constitutional freedom to associate with others for the common advancement of political beliefs and ideas protected by the First Amendment." Carrasquillo v. Puerto Rico ex rel. Justice Dep't., 494 F.3d 1, 4 (1st Cir. 2007). "[T]he First Amendment protects associational rights . . . [and] the right to be free from discrimination on account of one's political opinions or beliefs." Galloza v. Foy, 389 F. 3d 26, 28 (1st Cir. 2004). Accordingly, "a government employer cannot discharge public employees merely because they are not sponsored by or affiliated with a particular political party." Id.; see also, Carrasquillo, 494 F.3d at 4 (citing Branti v. Finkel, 445 U.S. 507, 517-19 (1980)). This protection extends to career employees, transitory employees, and independent contractors. Martinez-Baez v. Rey-Hernandez, 394 F. Supp. 2d 428, 434 (D.P.R. 2005) (citing Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 98 (1st Cir. 1997)).

The First Amendment's protection against political discrimination also extends to other adverse employment actions, such as "promotions, transfers, and recalls after layoffs based on political affiliation or support . . . ." Rutan v. Republican Party of Illinois, 497 U.S. 62, 75 (1990); Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 767 (1st Cir. 2010). Furthermore, it "includes changes in employment, which, although not as extreme as dismissal, result in working conditions 'unreasonably inferior' to the norm for the position at issue." Carrasquillo, 494 F.3d at 4 (internal citations omitted); Rodriguez-Garcia, 610 F.3d

at 767.

Political discrimination claims must be reviewed through a burden-shifting scheme. Mt. Healthy City Board of Ed. v. Doyle, 429 U.S. 274, 287 (1977) (superseded on different grounds). The initial burden rests with the plaintiff, who must first show that "he engaged in constitutionally protected conduct, and that this conduct was a substantial or motivating factor for the adverse employment decision." Id.; see also Carrasquillo, 494 F.3d at 4; Padilla-Garcia v. Rodríguez, 212 F. 3d 69, 74 (1st Cir. 2000). To shift the burden to the defendant, a plaintiff must make the following four showings: (1) that the plaintiff and the defendant belong to opposing political affiliations; (2) that the defendant has knowledge of the plaintiff's opposing political affiliation; (3) that there is an adverse employment action; and (4) that there is sufficient direct or circumstantial evidence that political affiliation was a substantial or motivating factor in defendant's actions. Peguero-Moronta v. Santiago, 464 F.3d 29, 48 (1st Cir. 2006); see also Monfort-Rodriguez v. Rey-Hernandez, 599 F. Supp. 2d 127, 168 (D.P.R. 2008). Of course, these four showings must be made by a preponderance of the evidence as to each individual defendant.

Here, Defendants contend that Rangel-Padilla's complaint is devoid of the factual allegations necessary to properly plead a political discrimination claim. Docket # 17, pgs. 12-16. Specifically, they argue that "the pleadings do not establish that any of the named Defendants had knowledge that Plaintiff and his family members are lifelong fans of the PDP. Nor is there any plausible connection that such factor was a substantial or motivating factor behind the complained of action." Id., p. 15. Defendants are partially right.

The complaint contains no factual allegation that would allow an inference that co-defendant Santana knew about Rangel-Padilla's political affiliation or that such knowledge impelled him to act against Rangel-Padilla. Indeed, the only proper factual allegation the complaint sets forth against Santana is that he was a member of the committee that performed

the audit at issue in this case.[6] Clearly, such allegation is insufficient to support a political discrimination claim against Santana; therefore, Defendants' motion to dismiss that claim is **GRANTED**.

The same cannot be said about the allegations against Roman-Torres and Ortiz. As to them, the complaint properly alleges that they made statements showing not only knowledge of Rangel-Padilla's PDP affiliation, but also a desire to terminate his employment due to such affiliation. See e.g., Docket # 1, ¶ 61 ("Dr. Rosado told others that she wanted to get rid of that popular."); see also id., ¶ 73 ("Nydia Ortiz authorized Dr. Roman to harass plaintiff, because of his opposing political views . . . ."); id., ¶ 75 (Ortiz "authorized and ordered [the committee] . . . to go beyond the years they could validly investigate, and to try to root out reasons to fire Plaintiff Rangel."). At this stage of the proceedings, where the Court must credit all proper factual allegations, nothing more is need to defeat Defendants' contentions as to Roman-Torres and Ortiz. Of course, with the necessary evidentiary support, Defendants may still successfully challenge Plaintiffs' factual allegations at the summary judgment stage. For now, however, Defendants' motion to dismiss Rangel-Padilla's political discrimination claims against Roman-Torres and Ortiz is **DENIED**.

*B. Fourth Amendment Claims*

The Fourth Amendment establishes "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." U.S. Const. Amend. IV. The protection of property rights is at the center of this Amendment. Justice Scalia stated as much in a recent Supreme Court opinion: "The text of the Fourth

---

[6] The following excerpt from Plaintiffs' complaint exemplifies all the allegations brought forth against Santana: "Because Plaintiff Rangel belonged to a different political party than Santana, Joe Foe, and Fulano de Tal, they were motivated to illegally and arbitrarily investigate his personnel file in an attempt to have him fired and replaced with NPP affiliates." Docket # 1, ¶ 67. As it must, however, the Court ignored this and all similar conclusory allegations included in the complaint. See Iqbal, 556 U.S. at 677-79 (stating that conclusory allegations are discarded at motion to dismiss stage).

Amendment reflects its close connection to property, since otherwise it would have referred simply to 'the right of the people to be secure against unreasonable searches and seizures'; the phrase 'in persons, house, papers, and effects' would have been superfluous." U.S. v. Jones, - - - U.S. - - - -, 132 S.Ct. 945, 950, 181 L.Ed. 2d 911 (2012). Over time, however, the Supreme Court has extended the reach of the Fourth Amendment beyond property rights, establishing "that a violation occurs when government officers violate a person's reasonable expectation of privacy." Id. (internal quotation marks omitted). Accordingly, at this juncture, the dispositive inquiry is whether Plaintiffs' complaint sets forth factual allegations from which to conclude that Defendants' actions infringed a reasonable expectation of privacy. The answer to such inquiry is in the negative.

Plaintiffs' Fourth Amendment claim is that Defendants violated Rangel-Padilla's expectation of privacy by examining his personnel records during the audit. The Court nevertheless is aware of no case law, and Plaintiffs have propounded none, recognizing an expectation of privacy over personnel records applicable against supervisors. Further, even though ASSMCA is legally required to keep confidential personnel records for all employees, those records "may be examined for official purposes by authorized employees or officials." P.R. Laws. Ann. tit. 3, § 1467b. Plaintiffs' complaint establishes that the audit was undertaken for official purposes (to comply with an executive order) and that only authorized officials (Ortiz and Santana) reviewed the records at issue. For these reasons alone Plaintiffs' Fourth Amendment claim falters.

At any rate, without addressing the foregoing, Plaintiffs direct the Court to City of Ontario, Cal. v. Quon, - - - U.S. - - - -, 130 S.Ct. 2619, 177 L.Ed. 2d 216 (2010). Their half-page discussion, however, fails to provide a coherent application of this case. See Docket # 18, p. 16. Such a lackluster effort suffices to discount Plaintiffs' reliance on Quon: "issues adverted to in a perfunctory manner, unaccompanied by some effort at development argumentation, are deemed waived." United States v. Zannino, 895 F.2d 1, 17 (1st Cir.

1990). Regardless, Quon, which dealt with a search of personal property (a cellular phone), is factually inapposite to this case, where Plaintiffs can claim neither property rights nor an expectation of privacy over the personnel files at issue. For these reasons, Defendants' motion to dismiss Rangel-Padilla's Fourth Amendment claim is **GRANTED**.

*C. Fourteenth Amendment Due Process Claims*

The Fourteenth Amendment to the U.S. Constitution protects against deprivation of life, liberty, or property without due process of law "and guards against any encroachment on those rights by federal or state authority." Kwong Hai Chew v. Colding, 344 U.S. 590, 596-597, n. 5 (1953); see also Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 669 n. 5 (1974) (stating that these protections extend to the Commonwealth of Puerto Rico).[7] The Fourteenth Amendment due process guarantee has both procedural and substantive aspects. Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990). In this case, even though Plaintiffs' complaint fails to explicitly state so, their allegations appear to claim due process procedural violations; thus, the following discussion is limited to that aspect of due process.[8]

"[T]o establish a procedural due process claim under § 1983, a plaintiff must allege that he was deprived of a property interest by defendants acting under color of state law and without the availability of a constitutionally adequate process." Maymi v. Puerto Rico Ports

---

[7] The Calero-Toledo Court relied on Mora v. Mejias, 206 F.2d 377, 382 (1st Cir. 1953), which underscored Puerto Rico's Commonwealth status and held that the Fourteenth Amendment applies here with the same force and effect than in the States of the Union.

[8] In any event, Plaintiffs' complaint contains no allegations that could sustain a substantive due process claim. A "claim is cognizable as a violation of substantive due process only when it is so extreme and egregious as to shock the contemporary conscience." McConkie v. Nichols, 446 F.3d 258, 260 (1st Cir. 2006); see also Albright v. Oliver, 510 U.S. 266, 272 (1994)) ("Substantive due process claims generally have something to do with 'matters relating to marriage, family, procreation, and the right to bodily integrity' rather than property or employment issues."); Bibiloni Del Valle v. Puerto Rico, 661 F.Supp.2d 155, 185 (D.P.R. 2009) ("The very nature of this constitutional protection has caused that substantive due process protection be used sparingly.").

13

Authority, 515 F.3d 20, 29 (1st Cir. 2008). "Property interests are not created by the Constitution; 'they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law.'" Rosado De Velez v. Zayas, 328 F. Supp. 2d 202, 211 (D.P.R. 2004) (citing Bd. of Regents of States Colleges v. Roth, 408 U.S. 564, 577 (1972)).

Under Puerto Rico law, employees have no property interest over the functions they perform. Torres-Martinez v. P.R. Dep't of Corrections, 485 F.3d 19, 24-25 (1st Cir. 2007) (citing C.E.S. U.P.R. v. Gobernador, 137 P.R. Dec. 83, 110 (1994)). Nevertheless, employees classified as "career" or "permanent" have vested property rights over their positions, and cannot be deprived of these rights without due process of law. Febus-Rodriguez, 660 F.Supp.2d at 178. "At a minimum, career employees are entitled to notice and a meaningful opportunity to respond prior to termination." Id.; see also Monfort-Rodriguez, 599 F. Supp. 2d at 168. Put differently, before termination, due process requires that "[t]he tenured public employee [receives] oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 546 (1985).

Rangel-Padilla's due process claim is two-pronged. First, he claims a due process violation for the alleged stripping of functions he was subjected to. Second, he claims that his termination ran afoul of his due process rights. Plaintiffs, however, fail to address the case law cited above about the lack of proprietary interests over job functions. Neither do Plaintiffs explain why or how the pretermination proceedings afforded to Rangel-Padilla abridged his due process rights. On the contrary, Plaintiffs' complaint states that Rangel-Padilla received written notice of the charges pending against him and that he was afforded with an opportunity to defend his position. Those pre-termination steps generally preclude a procedural due process claim. See e.g., Cleveland Bd. of Educ., 470 U.S. at 546. Defendants underscore these facts on their motion to dismiss, but Plaintiffs ignored them in

their opposition. More important yet, Plaintiffs' complaint nowhere impugns the pre-termination proceedings afforded to Rangel-Padilla. Therefore, Defendants' motion to dismiss Rangel-Padilla's due process claims is **GRANTED**.

*II. The Statute of Limitations Challenge*

Defendants also challenge Plaintiffs' constitutional claims with a statute of limitations argument. Specifically, they contend that Rangel-Padilla's § 1983 claims are time barred because he "knew of the purported prohibited personnel action as early as January 19, 2010 when he received a letter stating the Administrator's intention to terminate him." Docket # 21, p 7. This argument is well off the mark.

Section 1983 carries a one-year statute of limitations in Puerto Rico. Moran-Vega v. Cruz-Burgos, 537 F.3d 14, 20 (1st Cir. 2008). This one-year period begins to run when the plaintiff knows or has reason to know about the injury at play. Morris v. Gov't Dev. Bank of P.R., 27 F.3d 746, 750 (1st Cir. 1994). In wrongful discharge cases, a plaintiff has the requisite knowledge when he "learns of the decision to terminate his employment." Rivera Muriente v. Agosto-Alicea, 959 F.2d 349, 352-54 (1st Cir. 1992). "[A]ll that is necessary in order to trigger the limitation period is that the employer must unambiguously indicate that a *final termination decision has been reached*." Id. (quoting Leite v. Kennecott Copper Corp., 558 F.Supp 1170, 1174 (D. Mass. 1983)) (emphasis added).

In this case, the requisite unambiguous, final termination notice came on May 25, 2010, when Rangel-Padilla received the termination letter. The January 19, 2010 letter that Defendants rely upon merely notified Rangel-Padilla about Ortiz's intentions in connection with his appointment. In fact, after the January 19 letter, Rangel-Padilla was allowed to contest Ortiz's contentions. Thus, Plaintiffs are correct in arguing that May 25, 2010, not January 19, 2010, started the one-year statutory clock for Rangel-Padilla's § 1983 claims. Filed on May 24, 2011, Rangel-Padilla's complaint beat the one-year mark by a day. Therefore, Defendants' motion on this front is also **DENIED**.

*III. The Qualified Immunity Defense*

Defendants also contend that the Qualified Immunity doctrine bars Plaintiffs' personal capacity claims. Qualified immunity is an affirmative defense against personal liability which may be raised by state officials. Whitfield v. Meléndez-Rivera, 431 F. 3d 1, 6 (1st Cir. 2005). It "provides a safe harbor for public officials acting under the color of state law who would otherwise be liable under 42 U.S.C. §1983 for infringing the constitutional rights of private parties." Id.; see also Anderson v. Creighton, 483 U.S. 635, 638 (1987). In Pearson v. Callahan, 555 U.S. 223 (2009), the Supreme Court reiterated that the qualified immunity inquiry is a two-part test. Maldonado v. Fontanes, 568 F.3d 263, 268-269 (1st Cir. 2009). That is, a "court must decide (1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." Id. The second step of the qualified immunity analysis, in turn, has two aspects. One aspect focuses on the clarity of the law at the time of the alleged civil rights violation, and the other focuses more concretely on the facts of the particular case and whether a reasonable defendant would have understood that his conduct violated the plaintiffs' constitutional rights. Id. at 269.

Here, the Court already established that Plaintiffs' complaint ably pleas claims under the First Amendment to the U.S. Constitution. Furthermore, the case law highlighted above shows that Plaintiffs' First Amendment rights were clearly established at the time of the events underlying the complaint. Nevertheless, on the pleadings alone, the Court is unable to determine whether an objective official in Defendants' position would have reasonably concluded that his actions ran afoul of the First Amendment. The Court therefore holds that Defendants are not entitled to qualified immunity on Rangel-Padilla's First Amendment claims. If appropriate, Defendants may restate this defense at a later stage.

16

_____

*IV. The Supplemental State-Law Claims*

Because Defendants' plea for the dismissal of Plaintiffs' state-law claims assumes the dismissal of all of their federal-law claims, the Court need not address the same.

**Conclusion**

For the foregoing reasons, Rangel-Padilla's Fourth and Fourteenth Amendment claims are **DISMISSED with prejudice**. Defendants' motion to dismiss is **DENIED** as to all other claims.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 1st day of May, 2012.

*s/Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge